Oral argument not to exceed 15 minutes per side. Mr. Pugh for the appellant. Good morning and honors. Mr. Thompson. May it please the court. I'd like to ask for three minutes of rebuttal time. With the court's permission, I'd like to ask for Mr. Pugh to come forward. With the court's permission, I would also like to focus my argument on the primary issue of whether the district court had subject matter jurisdiction over Ms. Enriquez's claims. More specifically, I would like to focus on our argument heading number three, which expounded on 1252G's jurisdictional stripping feature and Reno v. AADC's decision regarding its limitations. As you are aware, the district court's opinion held that the court lacked subject matter jurisdiction. And while there appears to be some discussion of factual issues of whether or not defendant Newman knew Ms. Enriquez had DACA, the court stated, although the execution of the removal order should not have been carried out, Enriquez's claims are directly connected to the defendant's decision to execute a valid removal order against her. Thus, Enriquez fails to demonstrate that her claims do not stem from the enforcement of a valid removal order. Accordingly, 1252G deprives the court of subject matter jurisdiction. So this does not appear to be a factual attack on subject matter jurisdiction. It's purely a legal issue on whether or not 1252G strips the court of subject matter jurisdiction. The district court relied on the jurisdictional stripping feature as discussed in AADC. I would argue that it's merely a facial attack, and this court reviews a facial attack de novo. I know there were some conflicting affidavits and positions taken. Did the court purport to resolve factual issues? It didn't address those conflicting affidavits or the conflicting evidence. We hired an expert, which for us was almost like a smoking gun. As a matter of fact, it would probably get us past a summary judgment motion, where our expert found that Newman reviewed the database, the EIS-2 system, that clearly showed she had DACA. There was also contradictory statements in the affidavit. Defendant Newman didn't even address his purported review of the EIS-2 system until his last affidavit, or declaration rather, and he never addressed it in his first two. So when our expert reviewed that data and showed that he, in fact, reviewed the EIS-2 database that showed she had DACA, to us, that was sufficient. Now, I'd like to go back and talk about the 1252G stripping function. So the court would be confined to the allegations of the complaint, and the discovery would still need to be completed. As well, since we're limited to just the allegations in the complaint, those allegations would be taken as true. DACA, as indicated in the Politano memo, in document 29-1, is a decision by the Attorney General to exercise prosecutorial discretion to not deport someone because they are here illegally. But that doesn't, in any way, invalidate the underlying removal order. Well, Your Honor, Chief Justice Roberts said that a grant of DACA is effectively an adjudication. So if it's effectively an adjudication, I would argue that that would override the removal order. It's no longer effective because there's a grant of DACA. DACA grants affirmative relief. To defer action, but the order is still there. The order is still there, but it's not enforceable because she has DACA. Your Honor, if I may, if the decision was affirmed, we would have two different classes of people who have DACA. Those that have an order of removal and those that do not. It would create a class of DACA recipients whose wrongful detention is not subject to review by any court in America. However arbitrary the action was. So, for example, let's take a DACA recipient who does not have an order of removal. Because both qualify, whether you have an order of removal or not. So, if you put another DACA recipient in Ms. Enriquez's shoes, except there is no final order of removal, all the same facts apply regarding the EIS-2 system showing Newman reviewed it and showing that she had a work authorization ID. Newman checks the system and allegedly says, I do not see DACA here. She would still be arrested because Newman would say that she is not a citizen and does not have current DACA status. Thus, the final order of removal here has no bearing. Because the court would have subject matter jurisdiction over those claims, but not for Ms. Enriquez's. And I just don't see how that is applicable here then if we are talking about how she has DACA. DACA effectively stays that order of removal. It's not enforceable. As a matter of fact, DACA has... As a matter of discretion, it defers action on that order. It defers action, your honor, yes. But, there is still a procedure to remove DACA. So, if she has DACA, it's a mandatory feature and these officers, these EIS officers do not have the discretion to detain her. So, I'm not really sure why the order of removal would deprive the court of subject matter jurisdiction if she was wrongfully detained. Let me ask you this hypothetical. Let's assume that you have pretty much the facts that you have before us. With the added situation that this was not cleared up after 8 days or 10 days or however long it was. There is a DACA person there. They are in custody. And this issue is not resolved, say, for 3 months. If the federal court doesn't have jurisdiction, where does this person get relief? What happens to get this issue teed up before someone who can recognize the mistake? And then I want to come back and follow up. So, just answer that part of it for me first. Well, your honor, there are 3 discrete actions where 1252G deprives the court of jurisdiction. And Justice Scalia in Reno v. AADC said that this does not cover all deportation issues. He actually made a list of other issues where 1252G does not deprive the court. And I believe there are cases out there where 1252G did not deprive the court when there was a habeas petition. So, I don't think that 1252G is just the end all be all to deprive the court of subject matter jurisdiction. We are talking about something that does not fall within one of those 3 discrete actions as outlined in 1252G and AADC. And the point I was really kind of driving at is that, I think as Judge Batchelder was saying, the order is out there. It's just been deferred. So, the actions of the officers were, I guess, pursuant to a lawful order. They just shouldn't have been exercised in this case. So, if we are deprived, then where does this person go to get relief? And I know you are saying we are not deprived, but hypothetically assuming we were, where would that person go? Back to immigration court? Your honor, I don't think that she has any other available remedy except to go to the court and file a lawsuit, the district court. That's what I wanted to make sure you were saying, that if not the court, there's nothing. Right, your honor. And she's sort of left in a vacuum. And I think that there's other cases out there that have addressed this. Obviously, this is something that doesn't happen very often. And I don't think there's a whole lot of case law out there because it doesn't happen very often. But, we have enough allegations in our complaint to say that they knew she had DACA, but they detained her anyway, hanging her hat on an old order of removal that is not applicable or effective at this time. So, even arguably, if we're talking about the order of removal gives them, quote unquote, probable cause, that goes to the merits, if it's a factual attack, that goes to the merits of her claim. Probable cause is an amalgamation of different facts to determine whether or not somebody can be detained or arrested. And the order of removal is not the only piece of evidence out there. We have clear objective evidence from our expert. She had a work authorization ID, which DACA recipients are required to get once they apply for DACA. So, they seemingly just ignored this independent evidence and just detained her, hung her hat on this old order of removal. So, your honor, I don't know where else she would go for relief if she were just detained without us being able to file a lawsuit and address these grievances. Is it the Eighth Circuit that had a similar case? I believe it was that Hernandez-Najira v. United States, which was in the Eastern District of Virginia. It was a similar case where they discussed the 1252G stripping provision as well as Bivens' claims. But there it was about commencing removal proceedings, which was another facet of the 1252G stripping function. This was the Eighth Circuit. Silva, are you familiar with that case? Your honor, I don't have Silva in my notes. If it's in our brief, I would probably have to address that in my rebuttal time. They went the other way. I just want to know if you distinguish it or you just think it's wrong. Your honor, with respect, I don't have that in my 22 pages of cases. But I would argue that there are other cases out there that say that 1252G does not deprive the Court of Subject Matter Jurisdiction when you're talking about a constitutional deprivation, a Bivens' claim. I just don't see how fair it would be to other plaintiffs similarly situated to Ms. Enriquez to say that, well, just because there's an order of removal and they say they're enforcing an order of removal, they can go ahead and detain you arbitrarily regardless of the reason. And I wanted to close with a quote from Justice Scalia from Maryland v. AADC. To resolve the present controversy, we need not rule out the possibility of a rare case like Ms. Enriquez in which the alleged basis of discrimination is so outrageous that the foregoing considerations can be overcome. So I think that he allowed for claims like this to be allowed and for there to be Subject Matter Jurisdiction. Your view is that this rises to that level of so outrageous? May I plead? I'm out of time. Your honor, may I answer? Yes. Yes, your honor, it does because it's so outrageous. They knew she had DACA but they detained her anyway based on her nationality and her exercise of free speech to have other people released from detention. My time has concluded. Thank you, your honor. Just one moment if I can raise the podium. Good morning. May it please the court? My name is Tim Thompson. I represent the defendants. 8 U.S.C. 1252G states that no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by, it says the Attorney General, the 6th Circuit has interpreted that to be the Secretary for the Department of Homeland Security, arising from the actions to commence proceedings to adjudicate cases and to execute removal orders. The District Court in this case made factual findings, looked at the complaint, applied those together and determined the plaintiff's claims arise from the execution of a removal order. Whether the removal order should have been issued or not or whether the removal order should have been executed or not is a separate question and it's actually below the question of was a final order at issue and was that final order being executed. The District Court found affirmatively on those two questions. The District Court looked at evidence provided by both parties. As to the question of whether Ms. Enriquez-Perdomo was subject to a final order of removal, the District Court looked at certified documents from the United States Citizenship and Immigration Services and determined that yes, she was subject to a final order of removal. Indeed in her brief, she identifies that she's not using this proceeding to challenge her final order of removal. As to the second fact, the court determined that the plaintiff was detained to execute that final order of removal. The evidence the court looked at to determine that was the I-213 charging document that was completed at the time of the detention. My question relates to the last point that the appellant raised, which was you're correct, there was a final order of removal. She had DACA status. So in this case, you say, reading the language of 1252D, that the court should not have jurisdiction. Where does the person who is aggrieved of this injury go? Are you saying they're just without a remedy? No, I don't believe they're without a remedy. So where would they go to receive that remedy or to claim it? Plaintiff in this case sought a remedy. On August 23rd, six days after she was detained, she filed a habeas petition. Shortly thereafter, she was released. So if the wrong here was an improper detention... How can there be habeas jurisdiction? That goes, that's been something that courts have interpreted 1252G because they're concerned about stripping habeas. And so they've said, no, that habeas is separate and habeas claims are allowed. The district court then went on to... Can I clarify something? I'm sorry. I'm sorry. Hamama didn't allow a habeas claim. I'm aware of that case. And in that case, the court held that those were nontraditional habeas claims. Indeed, the habeas claim at issue in that case was different than the habeas claim at issue here. The plaintiffs in that case, I'm a little fuzzy on the details, but I believe they were seeking not to be removed to Iraq, if I'm not mistaken. And in this case, the plaintiff was seeking a traditional habeas remedy, the habeas remedy to be released from detention. The district court then found that the plaintiff was detained to execute the final order of removal. He looked at the charging document. The district court concluded that the charging document included language indicating that the final order of removal was being executed. But how does exercising jurisdiction in this case interfere with the AG's discretion or the AG's power? Well, at base, I'm not sure that's actually the most important question. Congress wrote 1252G, and it's very clear, and so it should be applied by its terms. And so in this case, the question doesn't need to be about what interference could or could not occur. It's that Congress stripped federal courts of jurisdiction over these sorts of matters. So whether it was interfering or not, that's also a question beyond the question that 1252G is, the facts that are necessary to support a 1252G argument and to deprive the court of subject matter jurisdiction. But the district court also looked at EON, the Enforced Alien Remove Module, which is ICE's database, which an ICE records custodian certified and provided a declaration in support of. And Mr. Newman reviewed that information that there was, EON was replete with information showing that the plaintiff was subject to a final order of removal and that the final order of removal should be executed if she was located and detained. Indeed, EON answered the specific question, proceed with removal, colon, yes, on the date of the detention. Later on, the ICE records custodian explained that that answer to the response was changed in EON so that a detention didn't happen in the future. Hypothetical, same situation, except they look after looking at that database, they look at the correct database and find out that she does have DACA. But they decide to ignore that maliciously and just pretend they're relying on the first database. Is that actionable in the federal courts? Under 1252G, it's not. There's no mens rea provision in there. The statute is enforced according to its plain terms. And several cases in the brief that I, the Apolese brief, involve situations in which ICE either allegedly made a mistake or actually engaged in intentional misconduct. And the court held, the courts held, that 1252G deprived it of jurisdiction. What about the 9th Circuit case? I'm not sure, the cases I'm referring to are Cariva from the Southern District of Ohio, Hodgson from the Southern District of Texas, Saring from the 10th Circuit. There is a case from California, I think it's Pedroza. Those are all referenced in my brief. But in each of those cases, in the Saring case, spelled T-S-E-R-I-N-G, so hopefully I'm pronouncing it correctly, the 10th Circuit was presented with an allegation that ICE fabricated documents to send a detainee to Nepal as opposed to Tibet, where he actually was from. And the 10th Circuit said 1252G applies to this case. It is clear, its terms are plain, and we're going to apply it, and it deprives the court of subject matter jurisdiction. So there are just some injuries in this context where there is no remedy. I know you said habeas before, but where there is an intentional act, a fabrication, some malicious thing, there may be times when habeas does not provide a complete relief. So in that case, it's just for the injured individual, it's just tough luck. I guess you don't have a remedy in court. Well, I think actually the proper focus then is on Congress and for Congress to create a remedy in that situation. And in the INA, Congress has jealously protected its ability to determine and to regulate the laws of naturalization, which is assigned to it under Article I of the Constitution. And Congress has repeatedly amended the INA. And it's never provided a damages remedy. And it's included 1252G. In fact, it just included 1252G in the late 90s or mid-90s in response to discretionary actions being challenged on both sides and that it was prosecuting individuals based upon improper grounds, or not prosecuting, but I'm sorry, but removing people on improper grounds. And Congress said, we're going to take this whole area of litigation out. We're not going to allow cases to be focused on these three discretionary actions. But this isn't a discretionary action. It is a discretionary action in the sense that, for one, there's no, in the Sila case, for example, that you brought up a little while ago, what the court said there is that 1252G applies whether it's a non-discretionary or a discretionary action. So there was, it didn't, I'm not sure it's cited in any other cases, but there is, it is a circuit split, I guess, at base, because the Ninth Circuit has held that 1252G only applies to discretionary actions. That's the case I was asking about. Okay, I'm sorry about that. Yeah, Arce is the name of that case, I believe. And in that case, and actually in all of the cases where you look at discretionary versus non-discretionary actions, it's notable that the courts, when they've held that way, that there's a distinction, which of course is not in the statute, is that either a court order is at issue, so there's a judicial stay on the removal, and then the individual is removed and the court allows the claim to proceed, or there's a statutory stay at issue that says, in this case, when you filed an appeal with the Bureau of Immigration Appeals, you're automatically stayed. In this case, that's not. Those are involving other branches of government and the executive has gone and acted. And so the courts have drawn that distinction. In this case, the executive is acting all the way through. The executive made the distinction. The executive acted and granted her DACA status. So why does that not put sort of a different cast on the removal order? Because that removal order was not effective. The two ideas, the principles, stand next to one another. And 1252G speaks to the final removal order and says that claims arising from that supersede anything else. That's how Congress wrote the statute. But let's say it had been vacated. What had been vacated? The final removal order.  So it turned out that a final order of removal was being enforced and then the person was detained. I believe she was detained for 70 days. And then it turned out that the final order of removal was actually an error. And the court, the court sui sponte raised 1252G and ended up finding that 1252G deprived it of subject matter jurisdiction. So the Constitution gives the Congress power over immigration issues. And Congress then has given the Attorney General a lot of discretionary authority to do all kinds of stuff in immigration. But where Congress passes a statute that says, but the courts can't interfere in these areas, reconcile for me how the Congressional grant of authority to the executive branch and then the Congressional authority to say that the courts don't have any authority in an area. How do those work together? Well, just because the executive has been delegated authority or power from Congress to enforce the nation's immigration laws, for one, suppose that's how that has to happen because Congress doesn't have any ability to enforce its laws. It always has to delegate that out. But two, Congress never authorized the executive to implement regulations related to people who have come here who are undocumented who didn't go through the authorized process of entering this country and then to set up some sort of system. This was, by the very terms of the Napolitano memo, an exercise in prosecutorial discretion. It conferred no path to citizenship and conferred no immigration status. So I don't think it's entirely accurate that those are in conflict. I think Congress has asked... I didn't say they were in conflict. Oh, okay. Reconciled. Okay, I believe that's how they're reconciled. We've spoken a lot about 1252G, and I believe the court found that. The court made these factual findings. The court looked at Plaintiff's complaint and determined that of her five claims, they all arose from the execution of the removal order. They're all focused on either the specific detention and whether the detention is unlawful or they're focused on the reason behind the detention. Backing up just here, correct me if I'm just wrong, scratching around in my law school memory here, but Congress does have the power and the authority to determine what the jurisdiction of the federal courts is. Absolutely. I should clarify that. That was specifically laid out in the Constitution. Correct. And when Congress says that the court doesn't have jurisdiction, courts find they don't have jurisdiction. I think that's how the structure of government is supposed to work. Thank you. I want to go back to something that I think we've talked about before, but I just want to make sure that I am clear on your position. So in this case, Ms. Enriquez-Ferdomo was challenging the circumstances of her arrest. And the fact that she was not subject to an active removal order at all. So since that was her challenge, how do we say that her claims arose from that removal order? That's point one. And I will anticipate what you're going to tell me. If a person is not challenging a removal proceeding, and they have DACA status, how are they still barred from bringing the claim in district court? They're not challenging the removal. I mean, they're not challenging removal status because they've got DACA. And that's not what the statute says. The statute is that if a claim arises from, that's been interpreted to be, if a claim is directly connected to the execution of a removal order, that then there's no subject matter jurisdiction. So the claim is directly connected to it. She brought two Fourth Amendment claims that said she was unlawfully detained. Well, the detention, and further into the execution of the removal order, I don't think it could be more closely connected. And the other claims are related to that she was retaliated against because of exercising her First Amendment rights, or that she was detained because of her ethnic origin. All of these, though, are because of her detention. They're all right there in that ball of the question of detention. And the detention only occurred because of the act of removal order, like the district court found. I'm out of time. But if there are any more questions. Any more questions? No, thank you. Thank you. Thank you. Your Honors? Do we have any questions before I begin? Well, there is this division, this split, on whether it's anything related or discretionary decisions. So do we have to go down the, adopt the discretionary decision to split the discretionary distinction to rule in your favor? The Attorney General has already exercised her discretion here. That is what's key, and that is what's not reviewable. I mean, the Attorney General said, Ms. Enriquez, you have DACA. My agents no longer have authority to detain you. That's actually what's not reviewable anymore, is the grant or taking away of DACA. This order of removal no longer has an effect. I know it's out there, but there's other DACA recipients out there that don't have orders of removal, and then this court would have subject matter jurisdiction over their claims. And so I just, I don't think that the order of removal has anything to do with plaintiff's claims. It's about whether or not she had DACA. So the Attorney General exercised her discretion, granted her DACA, and I think that that's enough for this court to have subject matter jurisdiction. What's the answer to my question? Pardon? What is the answer to my question? My question was, do we have to adopt the discretionary, non-discretionary distinction to rule in your favor? No, Your Honor, I don't believe we do. I don't think that you have to apply whether or not it's a discretionary or non-discretionary decision, but I do believe that there is no longer any discretion for the agents to effectuate that order of removal because she has DACA. It's the question of whether she has DACA or not, and if it's about whether or not she has DACA, 1252G is out the window. It just doesn't have any game here, because it's not about the enforcement of an order of removal. If that were the case, then every agent can say, well, I'm doing this to commence a proceeding. I'm doing this to effectuate a removal order, and they could just arrest people without banding and without review by this court and without any remedy. And, Your Honor, I have nothing further unless you would like to ask me further questions. Questions? No, thank you. Thank you. Thank you. Thank you.